○   FILED

97 FEB -5  AM 10: 53

U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**EASTERN DIVISION**

TOMMY PADGETT, BILL LUTZ and )
TOMMY JAMES, )
                             )

    Plaintiffs, )

                               )   CV 96-P-3012-E

    vs. )

AMERICROWN SERVICE )
CORPORATION, )

    Defendant. )

**ENTERED**

**FEB  5 1997**

---

**MEMORANDUM OPINION**

---

**INTRODUCTION**

On September 6, 1996, the plaintiffs, Howard Padgett, Bill Lutz and Tommy Jones, filed this action, on behalf of themselves and a putative class of others similarly situated, in the Circuit Court of Talledega County, Alabama. The basis of their action is that the defendant, Americrown Service Corporation ("Americrown"), had sold to the plaintiffs and to each member of the putative class racing souvenirs and merchandise at an artificially high price in violation of § 6-5-60(a) of the Alabama Code of 1975. Section 6-5-60(a) states:

> Any person . . . injured or damaged by an unlawful trust, combine or monopoly, or its effect,
> direct or indirect may, in each instance of such injury or damage, recover the sum of $500 and
> all actual damages from any . . . corporation creating, operating, aiding or abetting such trust,

combine, or monopoly . . .

In their complaint, the plaintiffs demand $500 for each violation of the statute against each plaintiff or putative class member.[1] However, each named plaintiff limits his potential recovery under the statute to $49,500. The plaintiffs similarly limit the recovery of each class member.

Americrown was served with summons and complaint on October 21, 1996 and filed a notice of removal to this court on November 20, 1996. The defendant states diversity of citizenship as its basis for removal. On December 18, 1996, the plaintiffs filed instant motion to remand on which this cause comes to be heard.

In denying that diversity jurisdiction exists, the plaintiffs do not contest that the named plaintiffs and the defendant are diverse. Supreme Tribe of Ben-Hur v. Cauble, 255 U.S. 356 (1921). Instead, the plaintiffs challenge the jurisdiction of the court on the basis that the instant suit does not satisfy the amount in controversy requirement imposed by 28 U.S.C. § 1332(a). As such, the motion to remand invites this court to revisit and explicate the position that it took in Tapscott v. Lowe's Home Centers, Inc., et al., CV 94-PT-2027-S (N.D. Ala. Nov. 1, 1994), and that was affirmed and elaborated upon in Tapscott v MS Dealer Servs. Corp., 77 F.3d 1353 (11th Cir. 1996), regarding the circumstances in which punitive damages can be aggregated to achieve the amount in controversy requirement to obtain diversity jurisdiction. This court must also determine whether the $49,500 limitation on recovery per plaintiff or putative class member is a permissible limitation for purposes of defeating diversity jurisdiction. If not, the court must then address the question of whether, in the absence of such limitation, some individuals could have claims exceeding the amount in controversy requirement which would create supplemental jurisdiction over the other claims under 28 U.S.C. § 1367(a).

## CONTENTIONS AND ANALYSIS

On a motion for remand, the defendant generally has the burden of demonstrating from the face of the complaint that the court has subject matter jurisdiction over the removed action. Pullman Co. v. Jenkins, 305 U.S. 534, 537 (1939). When, as in the present case, jurisdiction is premised on diversity of citizenship, the defendant must demonstrate, first, that the parties to the

---

[1] The plaintiffs do not seek the "actual damages" allowed under the statute.

2

action are diverse, or that any non-diverse parties are either fraudulently joined or are severable, Coker v. Amoco Oil Co., 709 F.2d 1433, 1439 (11th Cir. 1983), and second, that the amount in controversy requirement has been met. Burns v. Windsor Ins. Co, 31 F.3d 1092, 1094 (11th Cir. 1994). In cases in which the plaintiff has stated an amount in controversy greater than the jurisdictional requirement, a case will not be remanded on the basis of failure to meet the amount in controversy unless it can be shown to a "legal certainty" that the amount in controversy cannot be obtained. St. Paul's Indem. Corp. v. Red Cab Co., 303 U.S. 283, 288-89 (1938). In cases in which the plaintiff has not pled a specific amount, the defendant can show, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional requisite. Burns v. Windsor Ins. Co., 31 F.3d at 1094. Where the plaintiff has limited its damages to less than the jurisdictional minimum, the "defendant must prove to a legal certainty that plaintiff's claim must exceed $50,000." Id. at 1095.

The Supreme Court has articulated two means of satisfying the amount in controversy requirement in a class action. First, a federal court will have diversity jurisdiction over a class action if each named plaintiff and each member of the putative class individually satisfies the amount in controversy requirement. Zahn v. Int'l Paper Co., 414 U.S. 291, 300 (1973). Second, a federal court will have diversity jurisdiction over a putative class action if the members of the class have a "common and undivided interest" in their relief, the aggregation of which exceeds the requisite amount in controversy. Snyder v. Harris, 394 U.S. 332, 335 (1969).

In Tapscott v. MS Dealer Servs. Corp., 77 F.3d 1353 (11th Cir. 1996), the Eleventh Circuit Court of Appeals held that, generally, punitive damages constitute an aggregable form of relief, as the goal of punitive recovery under Alabama law is "to deter wrongful conduct and punish those responsible," not to provide relief to the individual plaintiffs. Tapscott v. MS Dealer Servs. Corp., 77 F.3d at 1358 (citing Reserve Nat'l Ins. Co. v. Crowell, 614 So.2d 1005, 1009 (Ala. 1993), cert. denied, 114 S.Ct. 84 (1993)). However, the Eleventh Circuit Court of Appeals went on to state:

> Our holding in this case is not to be taken to establish a bright line rule that any class claim for punitive damages may be aggregated to meet the amount-in-controversy requirement. While the facts in this case result in an aggregation of punitive damages, other factual situations may dictate that punitive damages are non-aggregable.

Tapscott, 77 F.3d at 1359.

In response to the instant remand motion, the defendant argues that the $500 amount recoverable by plaintiffs and the putative class under § 6-5-60(a) for Americrown's alleged anti-

competitive activity should be construed as a form of punitive damages aggregable for purposes of exceeding the amount in controversy requirement. As another basis for jurisdiction, the defendant contends that the $49,500 limitation on recovery is an artificial and unmaintainable cap on the recovery of individual class members, and therefore, the entire action can be removed on the basis of the unlimited recoveries of some class members. In making this argument, the defendant assumes that § 1367(a) creates a third avenue for establishing diversity jurisdiction in class actions. If only one member of the putative class could exceed the requisite amount in controversy, the defendant assumes, § 1367(a) would create supplemental jurisdiction over the rest of the class. To demonstrate that one member of the putative class might have claims exceeding $50,000, the defendant argues that a legal certainty exists that the $49,500 cap on recovery imposed by the plaintiffs cannot be imposed.

## I. AGGREGATION OF PUNITIVE DAMAGES

Americrown states, as a basis for removal, that the $500 amount recoverable by plaintiffs for anti-competitive acts under § 6-5-60(a) is a penalty, and therefore, constitutes punitive damages. Because an award of the statutory penalty is a punitive award, argues the defendant, the entire recovery of the individual penalties is aggregable under the Eleventh Circuit Court of Appeals's holding in Tapscott v. MS Dealer Servs. Corp., 77 F.3d 1353, 1359 (11th Cir. 1996), that punitive damages are generally aggregable.

The plaintiffs argue that the $500 statutory penalty recoverable under § 6-5-60 does not constitute punitive damages. Punitive damages, state the plaintiffs, are generalizable, and do not inure to the benefit of each individual class member, but to the benefit of the class as a whole. Because the penalty recoverable under § 6-5-60(a) is plaintiff specific, it is not a form of punitive damages.

It is also suggested by the plaintiffs that the statutory penalty cannot be a form of punitive damages because the plaintiffs could have stated a claim for punitive damages in addition to the statutory penalty. That the plaintiffs could have demanded both punitive damages and the statutory penalty under § 6-5-60(a) gives rise to the inference that punitive damages and the statutory penalty constitute two different forms of relief.

Americrown responds that the statutory penalty is a form of punitive damages. First, states the defendant, citing the memorandum opinion of the District Court for the Northern District of

4

Illinois in <u>In re Brand Name Prescription Drugs Antitrust Litigation</u>, 96-C-4323 (N.D. Ill. Oct. 1, 1996), the statutory penalty is awarded in addition to compensatory damages. The statutory penalty would not act as a surrogate for compensatory damages in the instant suit. The actual damages are apparently minuscule in comparison to the penalty award that can be recovered. Therefore, maintains the defendant, the statutory penalty is intended to serve a different objective than compensation, i.e. punishing anti-competitive conduct.

Second, Americrown contends, a civil penalty, like the one in the statute, is "a monetary sanction enacted to punish someone for doing a prohibited act." Defendant Americrown's Response Brief at 6. Because the penalty is intended to punish a type of behavior, not the particular wrongful act, the statutory penalty should be considered punitive damages. The penalty operates as a form of recovery, the goal of which is not to make a plaintiff whole, but whose purpose is to exact a specific fee from a defendant for engaging in unlawful conduct with respect to that defendant. In this sense, the recovery of the penalty operates as a punitive award.

The arguments by both parties about whether the statutory penalty is a form of punitive damages arises from a concern about the scope of the term "punitive damages." The plaintiffs seek to identify one kind of punitive recovery, "punitive damages," and define the entire scope of punitive recovery on that basis to the exclusion of all others. The defendant engages in similar argument in stating that all forms of punitive recovery are like punitive damages and should therefore be aggregated.[2] The term "punitive damages" is broad, but the kinds of punitive recovery that arise under that label are not homogenous. For example, that punitive damages, commonly conceived, can be recovered in addition to the statutory penalty merely indicates a difference in two types of punitive recovery. This should not be surprising. Under the heading of compensatory relief are a host of remedial bases — lost profits, loss of consortium, mental anguish, etc. — all in addition to what are commonly called "compensatory damages," reparations for the damage itself. Therefore, although the statutory penalty is a form of punitive recovery, <u>Tapscott</u> does not require that all claims for punitive recovery automatically be treated alike and aggregated. <u>See</u> <u>Tapscott</u>, 77

---

[2] In some sense, both the plaintiffs and defendant agree on the same underlying proposition, that the statutory penalty either is or is not punitive damages. The parties disagree on the scope of the term "punitive damages." The plaintiffs seek to restrict the term to explicitly those kinds of damages at issue in <u>Tapscott</u> while the defendant considers the scope of the term to include the statutory penalty at issue here. The defendant also asserts that because the statutory penalty is within the scope of the term "punitive damages," there is no difference between the statutory penalty and the punitive damages in <u>Tapscott</u>.

F.3d at 1359 n.13.

The sole basis for determining whether punitive damages should be aggregated, argues the defendant, is the nature and purpose of those damages. The defendant states that the distinction between "common and undivided" and "separate and distinct" forms of recovery is elusive. However, reasons the defendant, that the penalty is "plaintiff specific" does not suggest that the penalty is meant only to compensate each plaintiff. Quoting Tapscott, 77 F.3d at 1358 n.11, Americrown states, "Whether punitive damages are aggregable cannot be determined on the distinction of whether they arise from multiple individual transactions or from a single mass tort." Instead, contends the defendant, whether aggregation is proper should be determined by the nature and purpose of the penalty.

Although the nature and purposes of the statutory penalty are certainly factors to be considered in the determination of whether the individual penalties should be aggregated, they are not determinative of that result.[3] It is relatively indisputable that the purposes of the statutory penalty are "'fundamentally collective,' their purpose being to protect society by punishing and deterring wrongful conduct." Id. at 1358. However, as the plaintiffs point out, the Eleventh Circuit Court of Appeals examined other considerations in determining whether punitive recoveries could be aggregated.

One consideration is whether the plaintiffs individually have a "claim of right" to the punitive recovery. As the plaintiffs note, each member of the class has a statutory right to the $500 penalty upon the showing of a purchase. That a "claim of right" to the statutory penalty exists suggests that the damages were created as a specified deterrent of which the wrongdoer would know in advance of committing any wrongdoing. While the court or jury is required to mete out punishment for discrete instances of anti-competitive conduct under the statute, it may also be free, if the plaintiffs requested punitive damages, to deliver a punitive award for the whole of the allegedly bad conduct.[4]

The plaintiffs note another consideration, whether the right to damages would be awarded

---

[3] One rather large problem with the defendant's conclusion that the nature and purpose of the penalty should be wholly determinative is that, essentially, all punitive awards are meant to deter wrongful conduct of the defendant and thereby accomplish the goals of the state in preventing and punishing wrongful acts. The distinction between aggregable and non-aggregable punitive awards established in Tapscott would be obliterated.

[4] The court does not reach the issue of whether plaintiffs could claim punitive damages in addition to the statutory penalty. It is narrowly arguable that the penalty amount was intended as a preemptive cap.

to the putative class as a whole or whether the damages would be awarded on an individual basis.

> How the remedy is to be distributed has been considered important in determining whether an interest is common and undivided. Remedies for the benefit of the group rather than vindication of individual rights are considered a common interest. See generally 1 MOORE'S FEDERAL PRACTICE ¶ 0.97[5], at 931. Courts look to whether the defendant has an interest in how the remedy is distributed among the plaintiffs, see, e.g., [Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 1334 (5th Cir. 1995)], or whether the failure of one class member's claim will increase the others' shares, see, e.g., [Asociacion Nacional de Pescadores a Pequena Escala o Artesanales de Columbia v. Dow Quimica de Columbia, S.A., 988 F.2d 599, 563 (5th Cir. 1993), cert. denied, 114 S.Ct. 685 (1994)]. If a defendant is disinterested in how a potential remedy is distributed among plaintiffs or whether the failure of one plaintiff's claim increases the shares of others, the plaintiffs are considered to have a common interest in the award.

Tapscott, 77 F.3d at 1359 n.14. As the plaintiffs state, the members of the class will not receive pro rata shares of an overall statutory penalty recovery. "Rather, each member of the class will receive monies based upon the number of purchases he or she has made." Plaintiffs' Brief in Support of its Motion to Remand at 20. In the instant suit, Americrown will be deeply concerned with the distribution of any award, as the failure of each individual's claims will affect the overall amount of the award. The remedy therefore looks more to "the vindication of individual rights," than to the "benefit of the group."

A final consideration stated in Tapscott is whether the punitive damage award would be made on the basis of Americrown's course of conduct "as a whole." Id. at 1358. In this case, the statutory penalty would not be awarded on Americrown's conduct, considered as one whole anti-competitive endeavor, but instead would be conditioned on each particularized instance of misconduct by Americrown.

The plaintiffs finally state that the class, if certified in federal court, would likely be a Rule 23(b)(3) class. See Alabama Optometric Ass'n v. Alabama State Bd. of Health, 379 F. Supp. 1332, 1341 (M.D. Ala. 1974). As such, the plaintiff reasons, citing 1 MOORE'S FEDERAL PRACTICE ¶ 0.97[5] at 933:

> Class actions brought under Rule 23(b)(3) are predicated basically upon the predominance of common questions, rather than on the relationship of the parties. Accordingly, they generally involve separate and distinct claims for damages, as to which aggregation is improper.

An analysis of the considerations set out in Tapscott and other listed factors leads this court to the conclusion that there exists no "common and undivided interest" in the statutory penalties that the plaintiffs and putative class members might recover under § 6-5-60(a) of the Alabama Code

7

of 1975.[5]

## II. Self-Imposed Limitations and Supplemental Jurisdiction

Americrown's next basis for asserting jurisdiction is that the named plaintiffs' limitation on the amount in controversy to $49,500 per individual recovery operates as an artificial barrier that, once removed, would allow at least some of the class members to satisfy the amount in controversy requirement. If a class member is removable, the rest of the class, the defendant apparently assumes, can ride that class member's coattails into federal court.

No question exists that the $49,500 limitation on recovery was stated for the purpose of making the present action unremovable. However, the plaintiffs argue that they are allowed to plead less than the jurisdictional amount in a suit brought in state court to defeat federal jurisdiction:

> If [a plaintiff] does not desire to try his case in federal court, he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove.

St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 294 (1938).

The defendant responds that, as the representatives of the putative class, the named plaintiffs cannot limit the recovery of all class members to $49,500. To support its position, the defendant quotes this court's opinion in Reeves v. Discover Card Servs. Inc., CV 94-U-1450-J (N.D. Ala. Aug. 1, 1994):

> This court simply does not agree that a putative class representative can unilaterally agree to restrict the amount of damages that class members might receive, particularly where punitive damages are claimed. . . .
> This court concludes that such [a class] action can be maintained [in federal court] if punitive damages are claimed, unless a representative, with full authority to do so, waives such claims as to amount, etc.

The defendant next quotes this court's opinion in Calloway v. Baker Furniture Co., CV 94-PT-2751-S (N.D. Ala. Feb. 15, 1995) at n.2:

---

[5] The defendant also argues that the plaintiffs, as class representatives, are required to demand all possible forms of recovery in the instant suit. For reasons stated in part II, infra, the court finds this to be incorrect. Further, even if a punitive damages demand were required, it is difficult to perceive how such a claim would result in an additional award against the defendant. Unless the plaintiffs could prove the existence of some epiphenomenal wrong arising from the sum of the anti-competitive acts of the defendant — in this instance a strange and unlikely claim, although one could think of instances where such might not be so strange — any punitive damages demand against Americrown may be wholly redundant of the statutory penalty demand.

> [T]he court is not aware of any authority whereby a putative class member can limit, on behalf of putative class members, the amounts of the claims of class members as to compensatory or punitive damages.

The plaintiffs reply, first, that the court cannot adjudicate class certification issues while making its remand decision, because the court is not permitted to resolve non-jurisdictional issues when, prior to such analysis, it appears that the court lacks jurisdiction. In support of this position, the plaintiffs rely on <u>Mansfield, Coldwater & Lake Michigan Ry. Co. (M.C.&L.M. Ry.) v. Swan</u>, 111 U.S. 379 (1884). In <u>M.C.&L.M.Ry.</u>, a plaintiff who was non-diverse at the time of the filing of the action moved to another state, thereby creating diversity of parties. The defendants removed the action, arguing that diversity jurisdiction was created by the change of the plaintiff's citizenship. <u>Id.</u> at 381. The Supreme Court held that diversity jurisdiction did not attach, stating:

> [T]he rule, springing from the nature and limits of the judicial power of the United States, is inflexible and without exception which requires this court, of its own motion, to deny its own jurisdiction . . . in all cases where such jurisdiction does not affirmatively appear in the record on which, in the exercise of that power, it is called to act.
> [I]n the most recent utterance of this court upon the point in <u>Börs v. Preston</u>, [111 U.S. 252, 255 (1884)], it was said by Mr. Justice HARLAN: "In cases of which the circuit courts may take cognizance only by reason of the citizenship of the parties, this court, as decisions indicate, has, except under special circumstance, declined to express any opinion upon the merits . . . where the record does not show jurisdiction . . .; this, because the courts of the Union, being courts of limited jurisdiction, the presumption is, in every stage of the cause, theat it is without their jurisdiction unless contrary appears from the record." The reason of the rule, and the necessity of its application, are stronger and more obvious, when, as in the present case, the failure of the jurisdiction of the . . . court arises, not merely because the record omits the averments necessary to its existence, because it recites facts which contradict it.

<u>Id.</u> a 382-83. Therefore, argue the plaintiffs, examination of issues outside of the record is unwarranted.

However, instances exist in which a federal court is permitted to proceed beyond the complaint to determine if the jurisdiction of the court is being defeated through a sham in the pleadings. For example, the court has the authority to look beyond the pleadings to establish whether a party is fraudulently joined in a state action for the purpose of defeating diversity jurisdiction. <u>See</u> <u>Coker v. Amoco Oil Co.</u>, 709 F.2d 1433, 1440 (11th Cir. 1983). In <u>Amoco</u>, the Eleventh Circuit Court of Appeals stated:

> In order to establish that a fictitious resident defendant has been fraudulently joined, the removing party must show either that there is no possibility that the plaintiff would be able to establish a cause of action against the resident defendant in state court or that there has been outright fraud in the plaintiff's pleading of jurisdictional facts.

9

Id. at 1440. Similarly here, the removing party can demonstrate that the plaintiffs have fraudulently limited the amount in controversy if there is no possibility that the plaintiffs would be able to limit the amount in controversy in state court. See also, Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994) (holding that to demonstrate a fraudulent limitation, the "defendant must prove to a legal certainty that the plaintiff's counsel" is either "falsely assessing his case or is incompetently doing so"). Therefore, if the defendant can demonstrate that limiting the amount recovered by the members of putative class is impermissible, the limitation asserted by the named plaintiffs must be discarded.

A limitation on the amount in controversy would be impermissible where that limitation would detrimentally affect the fair and adequate of representation of the diverse class members. A unilateral restriction of recovery, without justification or waiver, hardly qualifies as adequate representation. Were the limitation based upon the belief of the class representative that damages were de minimis or that the law would not permit recovery above a certain amount, a stated limitation on the value of a claim could be justified. However, this court can find no authority that allows a class representative to limit the claims of class members solely for the purpose of forum convenience. The amount limitation imposed by the plaintiffs on the individual claims must therefore be disregarded.

Nonetheless, the defendant retains the burden of proof in demonstrating that the value of the individual claims is greater than the jurisdictional requisite. Although the defendant has speculated on how it is possible that the jurisdictional requisite could be met, it has not cited this court to any other cases involving this statute or similar statutes in which the amount in controversy requirement could be shown. Of its own initiative, the court searched to find an cases in which penalties under § 6-5-60(a) have exceeded the amount in controversy and has found none. Although § 6-5-60(a) claims occur more often in federal court than in state court, this seems to be more a result of their being coextensive with Sherman Act claims than anything else.

Section 1367(a) of Title 28 of the United States Code states:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joiner or intervention of additional parties.

A substantial debate has arisen as to whether § 1367(a) creates supplemental jurisdiction over an

entire putative class where only a few members of that putative class satisfy the amount in controversy.  See CLINTON, MATASAR & COLLINS, FEDERAL COURTS: THEORY AND PRACTICE at 465-66 (1996) and WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2D § 3705 (Supp. 1996).  If § 1367(a) does create supplemental jurisdiction in class actions, then it would overrule the Supreme Court's holding in Zahn v. Int'l Paper Co., 414 U.S. 291, 301 (1973) that all members of a class action have to satisfy the amount in controversy requirement for federal jurisdiction to attach.  The Eleventh Circuit Court of Appeals has yet to rule on the matter.  However, in In re Abbott Lab., 51 F.3d 524, 528 (5th Cir. 1995), the Fifth Circuit Court of Appeals resolved the issue in favor of overruling Zahn:

> We cannot search legislative history for congressional intent unless we find the statute unclear or ambiguous.  Here it is neither.  The statute's first section vests federal courts with the power to hear supplemental claims generally, subject to limited exceptions set forth in the statute's second section.  Class actions are not among the numerated exceptions.[6]

As the court in In re Abbott Lab. itself noted, however:

> A disclaimer in the legislative history strives to make this point clear by stating: "[T]he section is not intended to affect the jurisdictional requirements of 28 U.S.C. § 1332 in diversity-only class actions, as those requirements were interpreted prior to [Finley v. United States, 490 U.S. 545 (1989)]."  1990 U.S.C.C.A.N. at 6860, 6875.  The passage cites Zahn as a pre-Finley case untouched by the Act.  1990 U.S.C.C.A.N. at 6860, 6875 n.17.

Id. at 528.

The court does not reach the issue here.  The court concludes that the defendant has not established with reasonable certainty that the claim of any named plaintiff or putative class member will likely exceed $50,000.  The court further concludes that the $500 penalty is, unlike the case in Tapscott, an individualized claim.  This court has no control over whether later claims may be asserted.  See Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994).  Perhaps the only way to address the issue is for defendants to later send copies of amendments to appellate courts in order to demonstrate that there may not be as much candor as Burns suggests.

## CONCLUSION

For the foregoing reasons, the plaintiffs' motion will be **GRANTED** and the action will be

---

[6]  In Stromburg Metal Works, Inc. v. Press Mechanical, Inc., 77 F.3d 928, 930-31 (7th Cir. 1996), the Seventh Circuit Court of Appeals sided with the Abbott court.

**REMANDED** to the Circuit Court of Talledega County, Alabama.[7]

This ___5___ day of February 1997.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE

---

[7] For comparison, see Gilman v. BHC Securities, ---- F.3d ---- (2d Cir. 1997).

12